## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

AMYHA S.,

                Claimant,

       v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

               Respondent.

No. 20 CV 6330

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Amyha S.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9]. This Court, therefore, has jurisdiction pursuant to 42 U.S.C. § 405(g). The parties filed motions for summary judgment. *See* [ECF Nos. 20, 26, 29]. For the reasons discussed below, Claimant's Motion for Summary Remand [ECF No. 20] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 26] is denied.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

## PROCEDURAL HISTORY

On July 28, 2017, Claimant filed an application for supplemental security income, alleging a disability beginning on January 1, 2016. (R.16). Her application was denied initially on October 18, 2017, and again on reconsideration on December 11, 2017, after which Claimant requested a hearing before an administrative law judge ("ALJ"). (R.16). On October 9, 2019, Claimant appeared and testified at a hearing before ALJ Edward P. Studzinski. (R.16). At the hearing, Claimant was represented by counsel. (R.16). During the hearing, the ALJ also heard testimony from Edward Pagella, a vocational expert. (R.16).

On December 27, 2019, the ALJ issued his decision denying Claimant's application for supplemental security income. (R.16-35). The ALJ followed the five-step evaluation process required by the Social Security Regulations to determine if an individual is disabled. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since July 28, 2017, the application date. (R.18). At step two, the ALJ found that Claimant had the following severe impairments: migraines, depression, anxiety, and temporomandibular joint ("TMJ") disorder (20 CFR 416.920(c)). (R.18).

At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)). (R.19).

2

The ALJ considered listing 11.02 of Appendix I and concluded that Claimant's migraine headaches failed to meet or medically equal this listing, noting the record failed to establish a detailed description from anyone who had observed at least one typical headache event, there was no evidence of a headache event lasting 4 to 72 hours untreated with the requisite symptoms, and there was insufficient evidence of the frequency and nature of headache events. (*Id.*) The ALJ further found there was no evidence of the overall effects of migraines on the Claimant's functioning, including whether there is a marked limitation in any areas of functioning. (R.19). In addition, ALJ found the Claimant's TMJ does not fulfill the requirements for any Listing under Section 1.00, nor does it fulfill the requirements of Listing 14.09 (inflammatory arthritis). (*Id.*)

The ALJ found Claimant's mental impairments, considered singly and in combination, did not meet or equal the criteria of listings 12.04 and 12.06, and concluded that the longitudinal record does not support a meeting or equaling of listing 12.06 or any other listing described in Section 12.00. (R.19-20). In making that finding, the ALJ considered and concluded that Claimant did not meet the paragraph B criteria. (R.20-22). The ALJ also considered whether the "paragraph C" criteria were satisfied and concluded there was nothing in the record that documented Claimant had a chronic affective/organic mental disorder as described in Section 12.04C and 12.06C. (R.22).

Before proceeding from step three to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4). "The RFC is the

3

maximum that a claimant can still do despite his mental and physical limitations."
*Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The ALJ found that Claimant
had moderate limitations in understanding, remembering, or applying information;
when interacting with others; with regards to concentrating, persisting, or
maintaining pace; and in adapting or managing herself. (R.20-21). The ALJ
concluded:

> "claimant has the residual functional capacity to work at all exertional
> levels with no restriction of her ability to lift and/or carry [*sic*] sit, stand
> or walk throughout an 8-hour workday. She can never climb ladders,
> ropes, or scaffolds. She is limited to working in non-hazardous
> environments, i.e., no driving at work, operating moving machinery,
> working on ladders, at unprotected heights, or around exposed flames
> or unguarded large bodies of water, and she should avoid concentrated
> exposure to unguarded hazardous machinery such as a punch press and
> large robotic machinery. In addition, the claimant is further limited to
> simple, routine tasks, work involving no more than simple decision-
> making, no more than occasional and minor changes in the work setting,
> and work requiring the exercise of only simple judgment. She ought not
> perform work which requires multitasking. She could perform work
> requiring an average production pace, but is incapable of significantly
> above average or highly variable production pace work. She ought not
> perform work which requires significant self direction. She is further
> precluded from work involving direct public service, in person or over
> the phone, although the claimant can tolerate brief and superficial
> interaction with the public, which is incidental to her primary job duties.
> She ought not work in crowded, hectic environments. She can tolerate
> brief and superficial interaction with co-workers and supervisors as is
> common in unskilled work, but is not to perform teamwork or tandem
> tasks."

(R.22). At step four, the ALJ determined that Claimant did not have any past relevant
work. (R.34). At step five, the ALJ considered Claimant's age, education, work
experience, and residual functional capacity, and concluded that there are jobs that
existed in significant numbers in the national economy that Claimant can perform,
including based on the testimony of the vocational expert that Claimant would be

able perform certain representative occupations that are available nationally (laundry worker and packer). (R.34). For all of these reasons, the ALJ found Claimant has not been under a disability, as defined in the Social Security Act, since July 28, 2017, the date her application was filed. (R.35).

The Appeals Council declined to review the matter on August 21, 2020, making the ALJ's decision the final decision of the Commissioner. (R.1-6). Therefore, this Court now has jurisdiction to review this matter. 42 U.S.C. § 405(g); *Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek*, 139 S.Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary

support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant argues the ALJ's decision cannot stand in this case because: (1) the ALJ's assessment of the mental limitations in Claimant's RFC was not adequately supported by the medical evidence; (2) the ALJ's assessment of the physical limitations in Claimant's RFC was incomplete; and (3) the ALJ erred by discounting Claimant's reported subjective symptoms and limitations. The Court addresses each of Claimant's argument below, beginning with the last issue first.

## I. The ALJ Improperly Drew Negative Inferences From Claimant's Treatment History To Discount Claimant's Subjective Description Of Her Symptoms

Claimant argues "the ALJ was prohibited from drawing negative inferences from [Claimant's] treatment history without inquiring into and considering her reasons for the nature of that treatment." [ECF No. 20] at 13-14. Claimant also says the ALJ's reliance on Claimant's purported two-year lapse in mental health treatment (*see* R.32 ("the record shows that the claimant returned to psychiatric treatment and medication management in March 2019, after two years off") is

7

contrary to the evidence. [ECF No. 20] at 13-14. The Commissioner does not dispute the evidence that there was no two-year lapse in Claimant's mental health care and concedes the ALJ erred in failing to consider Claimant's reasons for not complying with treatment recommendations but argues this error was harmless because there are other reasons adequately supported in the record to uphold the ALJ's negative credibility determination. [ECF No. 26] at 13-14.[3]

Although an ALJ's credibility determination is entitled to deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009). Of particular relevance here, Social Security Ruling 16-3p provides that while an ALJ may consider that a claimant "fails to follow

---

[3] The Commissioner does not respond to Claimant's citation of record evidence showing she did, in fact, receive psychiatric treatment and medication management in the years prior to March 2019. [ECF No. 20] at 14. Claimant notes while she had not seen the provider referenced in the particular medical record cited by the ALJ for two years (Crystal Cole, APN, at PCC South Family Health Center), she received ongoing treatment from her primary doctor, Dr. Moshni Sivasubramaniam, who "continued to prescribe and adjust psychiatric medications," as well as "a therapist at Advanced Behavioral Centers of DuPage" and "cognitive behavioral therapy at Rush University Medical Center in January 2019." [*Id.*] (citing R.674-84, R.692-701, R.577-81, R.592-606, R.616-42, R.985, R.992). The ALJ's discussion of Claimant's medical record in 2018 and 2019 similarly noted Claimant received mental health treatment and was prescribed medication during that period, although the ALJ did not reconcile that evidence with his later conclusion that Claimant had "two years off" of psychiatric treatment and medication management. (R. 26-28 (referring to records in January 2018 that "Dr. Sivasubramaniam advised the claimant to restart gabapentin for sleep and started remoron in March 2018, for mixed anxiety and depressive disorder"; in September 2018, Claimant "was recently prescribed Prozac" but "she had stopped taking her Wellbrutin and Prozac" in November 2018); *see also* R.32). Accordingly, the Court concludes the ALJ's conclusion that Claimant had a two-year lapse in psychiatric treatment and medication management to be a factual error.

prescribed treatment that might improve symptoms," an ALJ may not find "the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record . . . without considering possible reasons he or she may not comply with treatment . . ." *See* SSR 16-3p, 2017 WL 5180304, at *9-10 (ALJ may need to "ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and may consider that "[a]n individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms"). The ALJ must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case" and "explain how [the ALJ] considered the individual's reasons in our evaluation of the individual's symptoms." *Id.*

The ALJ here discounted Claimant's statements regarding the intensity, persistence and limiting effects of her symptoms because he found those statements were not "entirely consistent" with the evidence. (R.25 ("[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . .")). In summarizing the medical evidence and Claimant's subjective descriptions, the ALJ described Claimant's accounts of her symptoms in reports from 2016 through 2019 as identifying anxiety and depression, with difficulty functioning in social interactions and settings, as well as obsessive and repetitive behaviors that

9

impacted sleep and resulted in fatigue. (R. 25-29). The ALJ also stated "[i]n terms of mental functioning, I recognize the claimant has a long-standing history of treatment," "endorsed post-traumatic stress disorder symptoms such as flashbacks, intrusive thoughts, guilt, shame, withdrawal, and persistent negative emotions," and complains of "anxiety-related symptoms such as feeling panic and nervous." (R.31).

Ultimately, however, the ALJ relied on Claimant's history of refusing medications to discount the credibility of her account of the severity and persistence of her symptoms. The ALJ found "the record shows some unwillingness or difficulty following treatment recommendations, despite the claimant acknowledging improvement in her symptoms." (R.31 (acknowledging Claimant reported increased symptoms of anxiety and depression in October 2018 "which sometimes interfered with her ability to engage in daily activities," but noting Claimant was prescribed medication and "would not get them filled")). The ALJ also described Claimant's statements in some medical reports that certain medications were effective at controlling some of her symptoms, as well as her decision at various points to stop taking certain prescribed medications or where she was advised to restart medications. (R.25-28). In particular, the ALJ focused on one report stating Claimant had "returned to psychiatric treatment and medication management in March 2019, after two years off" (a finding that, as discussed above, the Commissioner does not appear to dispute was a factual error) to conclude it "suggests [Claimant] was not experiencing any significant ongoing disabling symptoms" in previous years. (R.32 (citing Ex. 15F)).

The Court agrees with Claimant that the ALJ erred in drawing negative inferences about Claimant's credibility without exploring her reasons for stopping or not taking certain medications and, as noted above, the Commissioner concedes as much. [ECF No. 26] at 13-14. While the ALJ acknowledged record evidence concerning reasons why Claimant stopped taking or refused to take certain medications, including where medications reportedly did not work or caused side effects including suicidal feelings and sleep disruption, he did not further address those reasons or analyze whether Claimant's concerns were warranted. (*See* R.26 ("By December 2017, the claimant told her PCP Dr. Sivasubramaniam that she had tried esitaloptram, venlafaxine, and bupropion for anxiety and depression but that she felt nothing worked and this only gave her side effects"); R. 27 ("claimant noted that she had used gabapentin, which helped her mood for about three months but began to feel suicidal and then stopped using this medication"). The ALJ also noted one instance where Claimant was unable to see her therapist because "her insurance lapsed." (R.28). But the ALJ did not question Claimant at the hearing about her reasons for stopping any medications, nor did he address any concerns about Claimant's ability to access medical treatment. (*See* R.24 (noting Claimant testified her medications make her drowsy); Transcript of Oct. 9, 2019 Hearing, R.44-85, at R.50 (failing to ask questions about why Claimant stopped taking medications)).[4]

---

[4] Record evidence cited by the ALJ in support of his view that Claimant had not consistently followed medication management, *see* (R. 31-32 (citing Ex. 29F) and R.33 (citing Ex. 15F)), also referenced various reasons why Claimant stopped taking medications (*e.g.*, suicidal thoughts, restlessness and depression, sleep disturbances, feeling very sedated, anxiety about taking medications and fear that she will die if she does). *See* (Ex. 15F, R.666-753 at 763, 676, 685; Ex. 29F, R.1117-1120 at 1117).

The Court finds that the reasons provided by the ALJ for his adverse credibility determination are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016). "When considering non-compliance with treatment as a factor in determining whether a claimant is impaired, an ALJ is required to make a determination about whether non-compliance with treatment is justified and develop the record accordingly." *Hernandez v. Colvin*, No. 2:15-CV-268-JEM, 2016 WL 4506871, at *3–4 (N.D. Ind. Aug. 29, 2016) (citing *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) and *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)). "[W]hile infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding, we have emphasized that 'the ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.'" *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (quoting *Craft*, 539 F.3d at 679); *see also Torres v. Kijakazi*, No. 20-C-1033, 2022 WL 843931, at *3 (E.D. Wis. Mar. 22, 2022) (remanding where "ALJ erred in considering [claimant's] non-compliant treatment without considering the reasons for it"). This is also expressly required by SSR 16-3p. *Id.*, 2017 WL 5180304, at *9-10. Here, the ALJ failed to develop the record as to Claimant's treatment history and therefore did not make any evidence-based determination that Claimant's refusal to take certain medications was not justified.

The Court disagrees with the Commissioner that this was harmless error. Such "error is not harmless because a discussion of the factors related to [claimant's] non-

compliance with treatment may have impacted the ALJ's credibility determination, as well as [the] RFC determination." *Torres*, 2022 WL 843931, at *3. That is clearly the case here, where the non-compliance with treatment was a fundamental component of the ALJ's credibility determination and, as set forth below, also improperly formed the basis for the determination of Claimant's RFC. *See Ghiselli*, 837 F.3d at 779 ("We cannot deem the error harmless, as it informed several aspects of the ALJ's findings with respect to Ghiselli's residual functional capacity and consequently her ability to perform past relevant work or to adjust to other work."). The ALJ's reliance on Claimant's apparent gap in treatment for two years (even were that "gap" supported by the record) to conclude "[t]his suggests that she was not experiencing any significant ongoing disabling symptoms"—without exploring reasons for the lack of treatment—was also error. (R. 32.) *See Thomas*, 826 F.3d at 961 ("ALJ concluded from [claimant's] gap in treatment . . . that her symptoms were not as severe as she alleged, but, as noted, he did not explore her reasons for not seeking treatment, another error").[5]

The Court also disagrees that Claimant's "failure to follow treatment was only one small part of the ALJ's analysis." [ECF No. 26] at 14 (citing *Halsell v. Astrue*, 357 F. App'x 717, 723 (7th Cir. 2009)). The Commissioner points to the ALJ's reliance on

---

[5] The Commissioner relies on *McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011), but as that case explains "the harmless error standard is not . . . an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation" but rather asks "can we say with great confidence what the ALJ would do on remand." *Id.*, 641 F.3d at 892. Here, the Court cannot conclude "that no reasonable ALJ would reach a contrary decision on remand" regarding Claimant's history of medication refusal because the ALJ failed to adequately develop the record as to that history. *Id.*

mental status examinations where Claimant "generally presented with good insight, judgment, a normal mood and affect, and as active and alert," [ECF No. 26] at 14, but the ALJ cited only a single medical report from September 2017 in support of this claim. (R.31 (citing Ex. 1F)).[6] The Commissioner also says the ALJ found Claimant "exhibited above average intelligence, intact thought processes, and intact memory," [ECF No. 26] at 14, but neither the Commissioner nor the ALJ explain why reports of Claimant's intelligence or memory contradict the Claimant's credibility as to her anxiety, depression or other mental health symptoms.

Finally, the parties disagree as to whether the ALJ improperly equated Claimant's ability to engage in daily activities as a mother with an ability to work, [ECF No. 20] at 12-23, or, as the Commissioner argues, properly considered those daily activities in assessing whether her symptoms were as severe as she claims. [ECF No. 26] at 12-13. The Commissioner acknowledges it is improper for an ALJ to say "the claimant can perform this range of activities, therefore she can work." [*Id.*] (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013)). *See also Ghiselli*, 837 F.3d

---

[6] The Court notes the ALJ's opinion includes references to other medical reports suggesting Claimant presented as normal but anxious at her medical appointments. *See* (R.25-27 (citing Ex. 1F, November 2016 report from primary care physician: "claimant was active and alert but anxious"; January 2017 report from licensed clinical social worker: "[m]ental status was generally unremarkable"; Ex. 15F, December 2017 report from primary care physician: "[m]ental status exam . . . was within normal limits, but showed an anxious affect"; Ex. 11F, May 2018 therapy records: "show a normal mental status examination with normal concentration, impulse control, memory, judgment, and insight"; Ex. 11F, July 2018 progress notes: "continue to show a normal mental status" and was "talkative and engaged" and "anxiety had decreased since she was keeping busy but said that she was not sleeping"; Ex. 13F, February 2019 therapy records: "[m]ental status was within normal limits"; Ex. 25F, March 2019 counseling records: "anxious but stable in her functioning")). The ALJ, however, does not reconcile such reports of Claimant's purportedly normal presentation with the mental health symptoms and diagnosis also described or addressed by those providers.

at 778 ("the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer.") (internal citations omitted). But although the Commissioner argues "the ALJ never equated plaintiff's activities with the ability to perform work tasks" but "[r]ather. . . relied on the activities of daily living to show that plaintiff could, at a minimum, do more than she claimed she could do," the Commissioner fails to offer any citations to the ALJ's opinion in support of that assertion. [ECF No. 26] at 12-13. To the contrary, the Court notes that immediately following the ALJ's discussion of Claimant's employment history and ability to work, the ALJ stated "[m]ost significantly, it is noted that the claimant has described an ability for a number of activities as a stay at home mother" including "driving with her children, picking up her child from school, attending basketball games for her son, driving her son to work, attending to household chores, shopping, preparing meals, and managing household funds." (R.32). In the Court's view, the ALJ improperly considered Claimant's daily activities with her family to reach a conclusion as to her ability to perform tasks in a full-time work setting.

The ALJ also failed to address Claimant's "numerous qualifications regarding her daily activities." *See Moss*, 555 F.3d at 562. For example, while the ALJ repeatedly referenced Claimant's ability to attend her son's basketball games (R.21, 25, 29, 32, 33), he failed to resolve his conclusion that this evidenced Claimant's functional abilities with her testimony that the games were "years ago" and that

15

while at such games, she "was never able or comfortable to talk to any of the other people." (R.77). In addition, the ALJ did not explain how he reconciled his conclusions about Claimant's ability to drive, pick her children up from school, or grocery shop with her testimony that "she often has other people drive her places because she becomes anxious while driving," "she also has had panic attacks at the store on occasion and . . . feels better if her son is with her while shopping," that "her panic attacks are triggered by being out and around people" and the day before the hearing, "she had a panic attack . . . when she picked her daughter up from school." (R.23). The ALJ also acknowledged that Claimant reported increased symptoms of anxiety and depression in October 2018 "which sometimes interfered with her ability to engage in daily activities" yet as discussed above, the ALJ discounted that report (and others) based on Claimant's failure to take prescribed medication. (R.31).[7]

The ALJ's view of Claimant's treatment history was not only the underpinning of his credibility finding, it also formed the basis for Claimant's RFC, as set forth further below. In this context, the Court concludes the ALJ's error in failing to develop the record as to Claimant's reasons for not taking or stopping certain medications was not harmless and requires remand.

---

[7] Similarly, the ALJ did not explain how he considered or reconciled restrictions on Claimant's daily activities that were recounted in the medical records he summarized in his opinion. (R.27-29 ("she was not leaving her house, cooking, or sleeping well at night"; noting "a decrease in functioning by November 2018 with apathy and difficulty taking her son to school"; she "often hated the idea of driving" and "[o]n one occasion, she had called her mother to pick her up due to anxiety"; in August 2019, reporting "being anxious and having difficulty leaving home and completing independent activities of daily living," that Claimant "was utilizing a taxi service to get to appointments" and "experiencing a severe panic attack in a public parking lot after having issues with her car.").

## II.     The ALJ's Mental RFC Is Inadequately Supported

Claimant also contends the ALJ improperly crafted Claimant's RFC without relying on medical support, [ECF No. 20] at 6-8, and did not properly account for symptoms caused by her PTSD or OCD. [ECF No. 20] at 9.

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). An ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). An ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but she must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). It is well-settled law that an ALJ must set forth "specific reasons" for discounting subjective reports of symptoms. *Myles*, 582 F.3d at 676 (citing *Moss*, 555 F.3d at 561); *Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002).

### a) The ALJ's mental RFC is unsupported by medical evidence.

Claimant argues "the ALJ formulated his mental RFC without any medical guidance" because he "discounted the opinions of the State agency reviewing psychologists, who found that [Claimant] did not have a severe mental impairment" and only mild limitations, while also rejecting the medical opinion of Ms. De Marshimun, a licensed clinical social worker, that Claimant had severe limitations that impeded her ability to work. [ECF No. 20] at 6-8.

17

As an initial matter, the Court disagrees with Claimant's characterization of the ALJ's treatment of the state agency assessments. The ALJ did not completely reject the State assessments that found Claimant had only mild or no limitations with respect to her mental impairments. Rather, the ALJ found those opinions "somewhat persuasive," but ultimately the ALJ concluded, in light of new medical evidence that was not available at the time as well as Claimant's testimony, her mental impairments imposed additional moderate limitations. (R. 32-33).

In the Court's view, however, an evidentiary gap does exist as to the ALJ's finding that Claimant had the capacity to perform work with the moderate limitations included in the RFC. The ALJ stated Claimant's RFC was supported by "the claimant's response to treatment when compliant" and that Claimant was capable of performing work at all exertional levels with the limitations in his RFC when she followed medical recommendations. (R.22, 34). The ALJ stated "the record shows that the claimant has not always followed treatment recommendations and medication management, despite acknowledging improvement in her symptoms." (R.33) But beyond passing references about Claimant's experiences with prior medications referenced in some medical reports, the ALJ did not identify any medical evidence regarding Claimant's abilities to perform work or any other activities with the limitations he included in the RFC while on any specific medication. Moreover, the ALJ cited Ex. 29F, a medical record noting Claimant had said "she had been on Lexapro at one time and felt better on this medication but stopped taking it because she felt better" (R.28) but failed to address Claimant's testimony at the hearing that

she was experiencing anxiety although she was taking Lexapro at the time. (R.66). Similarly, the ALJ failed to reconcile Claimant's reference to past improvement while on Lexapro with the medical opinion from Ms. De Marshimun which noted Claimant "reported no significant change" while on her current medication (which apparently also included Lexapro, *see* R.1119). (R.33-34).

The ALJ is not permitted to "play doctor" in this manner. Here, the ALJ's speculation as to the extent of Claimant's abilities if she complied with treatment recommendations or took certain medication "was a medical finding that the administrative law judge was not qualified to make." *See*, *e.g.*, *David v. Colvin*, No. 14-CV-653-BBC, 2015 WL 6738882, at *8 (W.D. Wis. Nov. 4, 2015) ("Where the administrative law judge went astray is in concluding that 'were [plaintiff] busy on a full-time basis and consistent with treatment, her mental signs and symptoms would be greatly reduced,'" citing *Rohan v. Chater*, 98 F.3d 966, 970–71 (7th Cir. 1996)). The ALJ does not identify any medical evidence that compliance with a specific treatment plan would allow Claimant to work in accordance with the limitations of the RFC. "[T]he decision says nothing about whether any treatment plan designed by Plaintiff's mental health providers could be expected to restore Plaintiff's ability to work. It also says nothing about Plaintiff's reasons for noncompliance." *Hampton v. Colvin*, No. 1:12-CV-275-JEM, 2014 WL 523043, at *6–8 (N.D. Ind. Feb. 7, 2014) (remanding and noting "the ALJ determined what [Claimant's] RFC would be if [she] were fully compliant with a prescribed treatment plan. Any finding on the ultimate question of disability based on this hypothetical RFC would itself be hypothetical."); *see also*

*Hernandez*, 2016 WL 4506871, at *3–4 (remanding where "ALJ concluded that many of Plaintiff's physical limitations were due to this perceived noncompliance and based the RFC on an assumption of what Plaintiff would be able to accomplish if her diabetes were well-controlled" without exploring reasons for non-compliance or seeking additional information from medical providers); *David*, 2015 WL 6738882, at *8 (ALJ should have explored possibility that claimant's mental health condition itself inhibited her ability to take her medications "before concluding that plaintiff could work full time if she took her medicine as prescribed").

In short, there "is no medical assessment which supports a finding that [Claimant] can perform" all of the requirements contained in the RFC while she is on certain medication or following a treatment recommendation. *See Barbarigos v. Berryhill*, 2019 WL 109373, at *12 (N.D. Ill. Jan. 4, 2019). Without medical evidence regarding Claimant's limitations while complying with specific medical recommendations or taking medication, it is not clear how the ALJ determined that the findings he made as to what Claimant can and cannot do support his RFC assessment. *Id.* The ALJ essentially provided his own assessment of the medical evidence regarding Claimant's abilities if she were to follow treatment recommendations to fill in an evidentiary gap and ultimately concluded that Claimant can perform work at all exertional levels on a full-time basis with the particular restrictions he included when she complied with such recommendations. This is reversible error. *See Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (ALJ is not allowed to "play doctor" by using his or her own lay opinions to fill

20

evidentiary gaps in the record). The ALJ's RFC finding is not supported by substantial evidence, and remand is required for further development of the record as to Claimant's compliance with treatment, her abilities when compliant with treatment, and her reasons for following or not following particular recommendations.

### b) The ALJ discounted a treating physician opinion based on improper negative inferences stemming from Claimant's failure to comply with treatment recommendations.

Claimant also contends that while the ALJ acknowledged the severe limitations described by Ms. De Marshimun were "somewhat consistent" with Claimant's condition during a period when Claimant had entered a partial hospitalization program for her mental health, the ALJ improperly dismissed those symptoms as temporary based on the unsupported conclusion that such severe symptoms were not durational for more than 12 months. [ECF No. 20] at 8. Claimant also argues that the ALJ erred to the extent he considered Claimant's failure to follow treatment recommendations as a basis for finding Ms. De Marshimun's opinion not persuasive because the ALJ failed to consider Claimant's "repeated explanations for why she did not or was not able to follow some recommendations." [ECF No. 29] at 2; *see also* [ECF No. 20] at 8.

Because Claimant filed her claim in July 2017, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 416.920c(a). Instead, as Claimant acknowledges, [ECF No. 20] at 7, the ALJ was required to "evaluate the

persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Casey T. C. v. Kijakazi*, No. 20 C 5746, 2023 WL 3317387, at *3 (N.D. Ill. May 5, 2023) (quoting *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022)). *See also* 20 C.F.R. § 416.920c(c)(1)-(5). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 416.920c(b)(2).

The Court agrees with Claimant that the ALJ improperly relied on negative inferences from Claimant's treatment history (without exploring her reasons for declining certain medications) as a basis for discounting Ms. De Marshimun's opinion. In the paragraph of the ALJ's opinion concluding Ms. De Marshimun's "statement is not persuasive," the ALJ noted the level of limitation described in her opinion "is not supported by the overall record" and cited, among other evidence, that "claimant has not always followed treatment recommendations and medication management, despite acknowledging improvement in her symptoms." (*See* R.33). As discussed above, the ALJ failed to investigate Claimant's reasons for her non-compliance with treatment and medication recommendations and thus the ALJ's view of the longitudinal record was improperly colored by the negative inferences he drew from Claimant's treatment history. Similarly, the ALJ's conclusion that the

severity of symptoms described in Ms. De Marshimun's opinion reflected a temporary worsening of Claimant's condition was also premised on the ALJ's improper discounting of Claimant's credibility as to the severity of her symptoms in prior years.

It is also unclear to the Court how Claimant's past history of not taking medication was relevant to the persuasiveness of Ms. De Marshimun's opinion about Claimant's limitations during a period when she was apparently taking prescribed medication. *See* (R.33 (noting Ms. De Marshimun observed Claimant was receiving medication management with a psychiatrist "but reported no significant changes")).

In short, the ALJ's conclusion that Ms. De Marshimun's opinion was not persuasive was infected by the negative inferences he improperly drew from Claimant's treatment history. *See Thomas*, 826 F.3d at 960 (agreeing ALJ discounted treating physician's statement without an adequate reason where "the ALJ also noted [claimant's] gap in treatment . . ., but the relevance of this detail to Dr. Rashid's opinion is unclear, and, in any case, the ALJ did not explore the reasons for this gap."); *Dolores R. v. Saul*, No. 18 C 3711, 2019 WL 5963634, at *8 (N.D. Ill. Nov. 13, 2019) (ALJ was "obligated to ask Claimant about [reasons for lack of treatment] before citing the absence of follow-up treatment as a reason for discounting Dr. Duby's testimony on her ability to stand"). This error thus also requires remand.[8]

---

[8] While remand is warranted because of the ALJ's errors related to his consideration of Claimant's treatment history in rejecting Ms. De Marshimun's opinion, the Court does not opine as to whether or not Ms. De Marshimun's opinion is persuasive and acknowledges the ALJ identified other concerns with Ms. De Marshimun's opinion. For instance, the ALJ noted the limited duration of Claimant's treatment relationship with Ms. De Marshimun (only two months as of the date when she provided her opinion). (R.33). "The length of the treatment relationship, frequency of examinations, and extent of the treatment relationship is a relevant factor in determining the persuasiveness of an opinion because they 'may help

### c) The ALJ's failed to analyze the medical evidence regarding Claimant's PTSD and OCD symptoms and connect that evidence to the limitations in the RFC.

Finally, Claimant acknowledges the ALJ's decision not to include Claimant's PTSD and OCD among her severe impairments at step two, if in error, "may not be fatal, as the determination is a threshold issue," but argues the ALJ nevertheless failed to account for the symptoms caused by these conditions in the RFC. [ECF No. 20] at 9. The Commissioner responds "the ALJ was well aware of [Claimant's] allegations concerning OCD and PTSD" but found "the record did not support greater restrictions" and asserts "the logical bridge requirement is a minimal one." [ECF No. 26] at 8-9 (further noting state agency doctors, which the ALJ found "somewhat persuasive," did not find Claimant's PTSD or OCD to be severe).

The Court agrees with Claimant that the ALJ did not adequately analyze the medical evidence regarding her OCD and PTSD symptoms and explain how he accounted for those impairments in the RFC. Although the ALJ did not find the Claimant's PTSD and OCD to be severe impairments at step two, he was still obligated to include limitations for all medically determinable impairments, including non-severe impairments, within Claimant's RFC. *See* 20 C.F.R. §

---

demonstrate whether the medical source has a longitudinal understanding of your impairment(s)' and 'the level of knowledge the medical source has of your impairments.'" *See* *Rodolfo M. v. Kijakazi*, No. 21 C 5565, 2023 WL 264913, at *7 (N.D. Ill. Jan. 18, 2023) (quoting 20 C.F.R. §§ 404.1520c(3)(i)-(iii), 416.920c(3)(i)-(iii) and finding ALJ reasonably discounted physician's opinions who saw the claimant for only three brief visits before issuing psychological opinion). This is also a relevant consideration for the third persuasiveness factor (medical source's relationship with the claimant). *See* 20 C.F.R. § 416.920c(c)(3). The issue, however, is not whether Ms. De Marshimun's opinion is persuasive but whether the ALJ properly considered and evaluated it based on the evidence in the record and the applicable legal standards.

404.1545(a)(2); *McGarvey v. Kijakazi*, No. 21 C 6664, 2023 WL 374297, at *3–4 (N.D. Ill. Jan. 24, 2023) ("even if the ALJ erred in finding at step two that [an] impairment is not severe, the error is harmless unless the ALJ also failed to incorporate all of [claimant's] impairments—both severe and non-severe—into the RFC determination," citing *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015) and *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)). While the ALJ recited medical evidence describing Claimant's PTSD and OCD diagnosis and symptoms and acknowledged that Claimant "has endorsed post-traumatic stress disorder symptoms such as flashbacks, intrusive thoughts, guilt, shame, withdrawal, and persistent negative emotions," (R.31), "summarizing medical evidence is not a substitute for analysis."[9] *See*, *e.g.*, *Nancy R. v. Kijakazi*, No. 21 C 2962, 2022 WL 3926048, at *3 (N.D. Ill. Aug. 31, 2022) (citing *Erwin v. Astrue*, No. 11 CV 1555, 2012 WL 3779036, at *8 (N.D. Ill. Aug. 30, 2012)); *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) (same).

The ALJ failed to explain how he addressed Claimant's PTSD and OCD impairments in the RFC. The ALJ stated Claimant's social anxiety was addressed by the moderation limitations included in the RFC. (R.21 ("[t]he claimant's complaints of social anxiety have been considered in the [RFC]"), R.32 (RFC "provided significant social limitations to address anxiety, fatigue, and pain issues")). Beyond social

---

[9] The ALJ cited medical reports where Claimant was diagnosed with PTSD (in January 2017, September 2017, and August 2019) and OCD (in August and September 2019), and noted reports where Claimant described obsessive behaviors such as doing laundry, counting, and lawn mowing (in September 2017, June 2019, August 2019). (R.25-26, 28, 30, 31, 33). The ALJ also noted Claimant's testimony that she has "obsessive thoughts and is always thinking of past traumatic events" and has "symptoms of OCD involving cleaning and counting" which Claimant said were "exhausting and draining." (R.24).

limitations, the ALJ noted the RFC included restrictions on "climbing ladders, ropes, or scaffolds, driving at work, or exposure to hazards, to accommodate moderate limitations in concentration" and also referenced "pace limitations," (R.21), but does not explain how these limitations are intended to accommodate the Claimant's PTSD and OCD symptoms. Moreover, to the extent the ALJ may have discounted Claimant's subjective description of her PTSD and OCD symptoms based on her failure to comply with treatment plans or take medication, that would also be in error for the reasons discussed above. Without a more targeted explanation as to how the ALJ addressed the symptoms caused by Claimant's PTSD and OCD, including in the RFC, the Court cannot find that the ALJ built the requisite accurate and logical bridge from the evidence to his conclusion. *See Jeremy S. v. Saul*, No. 19 C 2837, 2021 WL 1209130, at *5 (N.D. Ill. Mar. 31, 2021) (citing *McKinzey*, 641 F.3d at 889).

The Court expresses no opinion on Claimant's remaining arguments (including as to the completeness of the physical limitations in the RFC), or the decision to be made on remand. But the Court does encourage the Commissioner to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that [she] may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

26

## CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's Motion for Summary Remand [ECF No. 20] is granted, and the Commissioner's Motion for Summary Judgement [ECF No. 26] is denied. This matter is remanded to the Social Security Administration for proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   September 5, 2023